**CPC INTERNATIONAL, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Slip Op. 97–1.
Court No. 95–02–00144.

United States Court of
International Trade.

Jan. 6, 1997.

---

Neville, Peterson, & Williams, New York City (John M. Peterson, George W. Thompson, Arthur K. Purcell & James A. Marino), for plaintiff.

Pillsbury Madison & Sutro, Menlo Park, CA (Lynn L. Miller), for The Pillsbury Company, amicus curiae in support of plaintiff.

Hogan & Hartson, L.L.P., Washington, D.C. (Timothy C. Stanceu and Scott M. Deutchman), for Grocery Manufacturers of America, Inc., amicus curiae in support of plaintiff.

Frank W. Hunger, Assistant Attorney General, Washington, D.C.; David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C.; Jeanne E. Davidson, Assistant Director, Washington, D.C. (Rhonda K. Schnare and Jeffrey M. Telep), Civil Division, U.S. Department of Justice, for defendant.

### Opinion and Order on Defendant's Motion for Rehearing

NEWMAN, Senior Judge:

#### INTRODUCTION

In this review of Headquarters Ruling Letter 557994 of October 25, 1994 ("HRL"), a preimportation ruling by the United States Customs Service ("Customs") reviewable by this court under 28 U.S.C. § 1581(h), defendant moves for rehearing of the court's order of remand of July 8, 1996, and reconsideration of the court's opinion, *CPC International, Inc. v. United States,* 933 F.Supp. 1093 (CIT 1996), pursuant to CIT Rule 59(a).

In January 1992, CPC sought a preimportation ruling from Customs that CPC would be the "ultimate purchaser" of Canadian-origin peanut slurry within the purview of the country of origin marking statute, 19 U.S.C. § 1304(a), as amended (§ 1304(a)), so that CPC's finished peanut butter sold under the tradename "Skippy," to be made in the United States in part from the Canadian slurry, would not require country of origin marking. After review of the HRL, the court's order of July 8, 1996 struck down as contrary to law Customs' Interim Regulation 19 C.F.R. § 134.35(a), effective January 1, 1994, implementing the North American Free Trade Agreement Implementation Act of 1993, Pub.L. No. 103–182, 107 Stat.2057–2225 (December 8, 1993), codified at 19 U.S.C. § 3311, *et. seq.* ("Implementation Act"). As implied by its name, the Implementation Act placed into force the North American Free Trade Agreement ("NAFTA") among the United States, Canada and Mexico. The genesis of 19 C.F.R. § 134.35(a) is briefly reviewed *infra.* This case was remanded to Customs for initial consideration of whether plaintiff's proposed manufacturing processes in the United States to make finished peanut butter would result in "substantial transformation" of the slurry under that test, as articulated in *United States v. Gibson–Thomsen Co.,* 27 C.C.P.A. 267, 1940 WL 4085 (1940) (*Gibson–Thomsen*), thus making CPC the "ultimate purchaser" of the Canadian slurry under the marking statute, 19 U.S.C. § 1304(a).

In accordance with defendant's motion under CIT Rule 62(b), the court has stayed the remand proceedings pending decision of the current motion for rehearing. Familiarity with the initial opinion and remand order is assumed herein.

While the court's initial opinion thoroughly addressed the issues raised up to that point, those issues have many aspects, the parties have made changes in their respective positions through the course of initial briefing, and defendant asserts that it did not previously have an opportunity to respond to new positions taken by plaintiff. Under all the facts and circumstances, including the complexity of the issues, the court believes that further analysis of the opposing arguments and amplification of the court's prior decision is warranted.

■ In addition to opposition papers submitted by CPC, memoranda in support of CPC's position and in opposition to defendant's motion were received from *amici curiae* The Pillsbury Company and Grocery Manufacturers of America, Inc.[1] in accordance with leave of court under CIT Rule 76. After extensive further consideration of the issues and in the light of the additional briefing, the court is persuaded that its initial conclusions are sound: notwithstanding the application of the NAFTA Marking Rules to except from marking a good of a NAFTA country processed in the United States so as to become a good of the United States, the pre-NAFTA *Gibson–Thomsen* or substantial transformation test of an ultimate purchaser under § 1304(a) remains an additional basis for exemption from marking of NAFTA

---

1. *Amicus curiae* Grocery Manufacturers of America, Inc. (GMA) is a trade organization representing a broad spectrum of major companies, including many "Fortune 500" companies, that make and market the world's best known brands of food and consumer packaged goods. The sales of GMA member companies, totaling $360 billion, represent the large majority (85 percent) of the volume of all food and consumer packaged

goods sold in the United States. *Amicus curiae* Pillsbury Company is among the well recognized United States food producers. *Amici* claim that because they (or their member companies) use imported ingredients in their U.S. manufacturing operations that are subject to the marking statute, they are prejudiced by the application of the contested Customs Ruling and Interim Regulation § 134.35(a) implementing NAFTA.

goods. Accordingly, Interim Regulation § 134.35(a), which bars application of the statutory ultimate purchaser provision as construed in *Gibson–Thomsen* to NAFTA goods, is contrary to law. Consequently, the court denies defendant's motion for rehearing.

## DISCUSSION

### I.

Notwithstanding the undisputed validity of the exception from marking of NAFTA goods processed in the United States, based on the Marking Rules, the pre-NAFTA ultimate purchaser marking exception under 19 U.S.C. § 1304(a) as construed in *Gibson–Thomsen* also applies to NAFTA goods. Thus, in the HRL Customs erred in failing to consider whether CPC would be the "ultimate purchaser" of Canadian-origin peanut slurry under the *Gibson–Thomsen* test.

Shortly following the enactment of the NAFTA Implementation Act, and as authorized by the Act under 19 U.S.C. § 3314, for purposes of determining country of origin, and for other purposes, "Interim Regulations" were promulgated by Customs pursuant to T.D. 94–1 and 94–4 to implement the Act, and thereby, NAFTA.[2] The contested Interim Regulation 19 C.F.R. § 134.35(a) was promulgated under T.D. 94–1, 58 Fed. Reg. 69460 (December 30, 1993), and became effective January 1, 1994. That regulation restricts to non-NAFTA goods the application of the substantial transformation test as articulated in *Gibson–Thomsen* for determination of the "ultimate purchaser" within the purview of 19 U.S.C. § 1304(a).[3]

In *Gibson–Thomsen*, the Court of Customs and Patent Appeals invoked the well settled principle of "substantial transformation" for determining whether an importer of goods to be further processed in the United States is the "ultimate purchaser" of such goods within the purview of 19 U.S.C. § 1304(a), thus

dispensing with the statute's marking requirements for the finished goods produced in the United States. The *Gibson–Thomsen* substantial transformation test, also now commonly referred to as the "traditional" test or "ultimate purchaser marking exception," had prior to NAFTA been followed in a long line of judicial authority and administratively codified in 19 C.F.R. § 134.35, which so far as pertinent, reads:

> An article used in the United States in manufacture which results in an article having a name, character, or use differing from that of the imported article, will be within the principle of the decision in the case of *United States v. Gibson–Thomsen Co., Inc.*, 27 C.C.P.A. 267 (C.A.D.98) [1940 WL 4085]. Under this principle, the manufacturer or processor in the United States who converts or combines the imported article into the different article will be considered the "ultimate purchaser" of the imported article within the contemplation of section 304(a), Tariff Act of 1930, as amended (19 U.S.C. § 1304(a)), and the article will be excepted from marking * * *

In T.D. 94–1, Customs amended, *inter alia*, Part 134 of the Customs Regulations to implement the provisions of NAFTA Article 311 and Annex 311, as placed into force by § 207 of the NAFTA Implementation Act. NAFTA Annex 311:(1) provides for the promulgation of Marking Rules used for determining whether a good is a good of a Party (NAFTA country) for the purposes specified in paragraph 1 of Annex 311 of NAFTA; and (2) sets forth general marking principles pertaining to the methods and procedures relating to country of origin marking of such goods. Part 134 sets forth regulations, including a definition of "ultimate purchaser" implementing the country of origin marking requirements and exceptions of § 1304(a) as well as the NAFTA implementing provisions promulgated under T.D. 94–1. *See* 19 C.F.R. § 134.0 (Scope). For purposes of Part 134 of

---

**2.** These Interim Regulations have now been adopted by Customs as final regulations. Determining the Country of Origin of a Good for Purposes of Annex 311 of NAFTA, 61 Fed.Reg. 28932 (June 6, 1996) (to be codified at 19 C.F.R. §§ 10, 12, 102, and 134).

**3.** Unless otherwise indicated, all references herein to the "ultimate purchaser" provision shall refer to such provision in 19 U.S.C. § 1304(a).

the regulations, the definition of the term "ultimate purchaser" references the substantial transformation test, or for a good of a NAFTA country, a process which results in one of the changes prescribed in the NAFTA Marking as effecting a change in the article's country of origin. *See* 19 C.F.R. § 134.1(d)(1).

Treas.Dec. 94–4, 59 Fed.Reg. 113, January 3, 1994, promulgated interim regulations, the most pertinent here being the so-called "Marking Rules" provided for under NAFTA Annex 311. Pursuant to T.D. 94–1, the specific Marking Rules for determining the country of origin of imported goods, *i.e.,* when a good is a good of a Party for the purposes specified in paragraph 1 of Annex 311 of NAFTA, were promulgated under Part 102 of the Customs Regulations. Section 102.11 in Subpart B of Part 102, covers general rules, and § 102.20 covers the specific change in tariff classification, or "tariff shift," rules based on the Harmonized Tariff Schedule of the United States.

Turning specifically to the challenged Interim Regulation § 134.35(a), T.D. 94–1 amended pre-NAFTA 19 C.F.R. § 134.35 by: (1) restricting that regulation, as stated in the italicized preface, to *"[a]rticles other than goods of a NAFTA country"* and redesignating former § 134.35 as § 134.35(a); and (2) by adding a new paragraph (b), "to indicate that the NAFTA Marking Rules will be used to determine when a good of a NAFTA country which is to be further processed in the United States is excepted from country of origin marking requirements." T.D. 94–1, Customs Bulletin, Vol. 28, p. 6. Thus, except for the italicized preface of § 134.35(a) restricting the paragraph to non-NAFTA goods, the text of pre-NAFTA § 134.35 remained essentially unchanged in the amended interim regulation. As aptly pointed out by defendant, the challenged regulation, 19 C.F.R. § 134.35(a), is not a "marking rule" *per se.*

Further, T.D. 94–1, as mentioned above, added a new paragraph (b) to former § 134.35 providing an altogether new exception to marking for NAFTA goods to be processed in the United States in such a manner that would result in the good becoming a "good of the United States under the NAFTA Marking Rules." Paragraph (b) mirrors the obligations of a NAFTA Party under Annex 311(5)(b)(viii) to provide the specified exception to marking for goods processed in the United States based on the Marking Rules.

Importantly, there is nothing in the Agreement or the Implementation Act that suggests that a NAFTA Party may not, *in addition* to the new NAFTA exemption for goods to be processed in the United States so as to become a good of the United States under the Marking Rules, continue to enjoy any other pre-existing exception to marking under the existing law of a Party covering goods processed in the United States. Defendant insists that the NAFTA Marking Rules based on change in tariff classification simply codify the pre-existing *Gibson–Thomsen* substantial transformation test of an ultimate purchaser under § 1304(a), that § 134.35(a) abrogating the change in name, character or use substantial transformation test was a valid exercise of Customs' rulemaking authority, and accordingly, for NAFTA goods processed in the United States, to be within the ultimate purchaser exception to marking under § 1304(a), plaintiff must comply with the tariff shift rules, as is also required by the exception to marking under 19 C.F.R. § 134.35(b). In short, defendant posits that for NAFTA goods the *Gibson–Thomsen* substantial transformation test does not provide an exception to marking in addition to the application of the Marking Rules, while plaintiff insists that the *Gibson–Thomsen* test remains an additional test pursuant to the ultimate purchaser provision in § 1304(a).

As stressed in the initial opinion, 933 F.Supp. at 1105, for purposes of Customs' own the "dual approach" Marking Rules under § 102.20, the prescribed tariff shift had to *concomitantly result in a substantial transformation,* and under 19 C.F.R. § 102.1(p), the term "substantial transformation" for purposes of Part 102 is defined under the *traditional criteria.* This dual test approach under certain interim Marking Rules speaks volumes that Customs viewed the change in tariff classification rules (*viz.,*

the Marking Rules) and the traditional substantial transformation test based on change in name, character or use of the processed good as separate and independent methodologies which could yield different results. Plaintiff and *amici curiae* have amply demonstrated by examples that the tariff shift concept of the Marking Rules frequently provides a different result than does application of the traditional "substantial transformation" test under *Gibson–Thomsen.* Consequently, as is evident from the dual test Marking Rules, NAFTA goods processed in the United States could fail to undergo the requisite tariff shift under a Marking Rule (thus failing to qualify for exception from marking under 19 C.F.R. § 134.35(b)) but nonetheless undergo a substantial transformation applying traditional *Gibson–Thomsen* criteria, and vice versa.

The dual tests required under certain Interim Marking Rules, with the potential for disparate results, buttresses the conclusion that the NAFTA Marking Rules did not simply "codify" the traditional substantial transformation criteria. In sum, the court holds that the traditional substantial transformation test under the ultimate purchaser provision of § 1304(a) remains an exception to marking for NAFTA goods processed in the United States in addition to application to such goods of the Marking Rules.

## II.

Customs' application of the NAFTA Marking Rules as a new or "revised definition" of the term "ultimate purchaser" under § 1304(a) for NAFTA goods, exceeded the agency's rulemaking authority and contravened the prohibitions of 19 U.S.C. § 3312(a).

Defendant asserts that Customs possesses broad regulatory authority under 19 U.S.C. §§ 66, 1304, 1624 and 3314 to revise the traditional definition of an ultimate purchaser under § 1304(a) by rulemaking and that there are no prohibitions or limitations under the NAFTA Implementation Act on making such regulatory revision. The court disagrees.

■ It is noted that while defendant vigorously urges that the tariff shift rules codify the criteria of the substantial transformation test, it is clear that under § 134.35(a) the *Gibson–Thomsen* test under § 1304(a) is restricted to non-NAFTA goods, and for NAFTA goods an ultimate purchaser is determined according to the change in classification rules. 19 C.F.R. § 134.1(d). However, the NAFTA Implementation Act and its accompanying *Statement of Administrative Action,* approved by Congress in the Act, 19 U.S.C. § 3311(a), make it clear that in implementing NAFTA, Customs was authorized to promulgate NAFTA Marking Rules *for purposes of Annex 311, id.,* H.R. Doc No. 159, 103d Cong., 1st Sess. (1993) at 479. Nothing in the Agreement, the Act, or *Statement of Administrative Action* suggests Customs was authorized to promulgate Marking Rules for any purpose other than NAFTA Annex 311. To the extent that the Marking Rules purport to be a "revised definition" of an ultimate purchaser under § 1304(a), or a codified "substantial transformation" test for NAFTA goods under § 1304(a) displacing *Gibson–Thomsen* from the statute, Customs exceeded its rulemaking authority to promulgate Marking Rules in furtherance of Annex 311 provisions.

■ As this court held in the original opinion, 933 F.Supp. at 1103–04, 19 U.S.C. § 3312(a)(2) expressly precludes construing or applying any provision of the Implementation Act as an amendment or modification of any law of the United States, unless specifically provided for in the Act. Additionally, § 3312(a)(1) makes ineffectual any provision of NAFTA (*i.e.,* Marking Rules, marking exceptions and definitions under Annex 311) and indeed broadly precludes application of any provision of the Agreement, "to any person or circumstance, which is inconsistent with any law of the United States." *Id.*

The court concludes that Customs' abrogation for NAFTA goods of the traditional substantial transformation test of an ultimate purchaser under § 1304(a) as construed in *Gibson–Thomsen* by amendment of its pre-NAFTA regulation § 134.35, and Customs' concomitant attempt through its Interim Regulations to bootstrap application of the

Marking Rules into § 1304(a) as the "revised definition" of an ultimate purchaser to displace *Gibson–Thomsen* contravenes the prohibitions of § 3312(a).

Defendant's bald contention that the term "any law" in § 3312(a) means only statutory law to the exclusion of judicial authority and even agency regulations interpreting the statute is plainly disingenuous. Fundamentally, of course, there are different kinds of "law," and the word "law generally contemplates both statutory and case law" as well as agency rules and regulations. *See* Black's Law Dictionary, Sixth Ed. (1990), pp. 884–85.

Notwithstanding the prohibitions of § 3312(a), defendant insists that abrogation of the *Gibson–Thomsen* test for NAFTA goods under § 1304(a), and application of the Marking Rules in lieu thereof to a redefinition of the ultimate purchaser provision of the statute was a valid exercise of Customs' broad rulemaking authority, namely: to substitute rulemaking of general applicability (*i.e.,* the Marking Rules) for adjudication (*i.e.,* under the traditional substantial transformation test).

Under § 3314 of the Implementation Act, Customs was granted authority to promulgate regulations "necessary to ensure" that the Act was "appropriately" implemented. Plainly, in determining whether a specific regulation "appropriately" implements the Act, the court must *inter alia,* observe the effect of the regulation on the specific statutory prohibitions under § 3312(a). Customs' rulemaking authority under §§ 66, 1624, and 1304 does not expand the agency's authority to implement the Act in contravention of § 3312(a) nor to undercut the limitations on the specific delegated authority granted by Congress under § 3314 of the Act itself.

Finally, defendant also disingenuously argues that under § 3312(a)(2)(B) nothing in the Implementation Act shall be construed to limit Customs' authority under existing law. What defendant overlooks are the following words "unless specifically provided for in this Act," which means that the antecedent § 3312(a) prohibitions specifically *limit* Customs' authority *under any law of the United States,* including Customs' rulemaking authority under §§ 66, 1624 and 1304.

### III.

Since under the Implementation Act Congress amended certain provisions of 19 U.S.C. § 1304 to bifurcate them for NAFTA and non-NAFTA goods, but did not amend the ultimate purchaser provision in § 1304(a) to bifurcate it for NAFTA and non-NAFTA goods, clearly Congress intended that for NAFTA goods, there be no change in the pre-NAFTA application of the ultimate purchaser provision.

Pursuant to § 207 of the NAFTA Implementation Act, Congress amended 19 U.S.C. § 1304 in certain respects, but chose to preserve the existing language of the "ultimate purchaser" provision in § 1304(a), which provision had been subject to longstanding judicial and administrative interpretation following *Gibson–Thomsen* of which Congress was presumably aware. By contrast, Congress amended other provisions of the very same statute, specifically to bifurcate them for NAFTA and non-NAFTA goods.

For example, pursuant to § 207(a) Congress amended the ultimate purchaser exception under 19 U.S.C. § 1304(a)(3)(H) to bifurcate its application for NAFTA and non-NAFTA goods. Thus, for NAFTA goods, § 207(a) (and hence 19 U.S.C. § 1304(h)(1)(A)), liberalizes or makes more lenient the standard of knowledge for that ultimate purchaser exception by substituting a "reasonably know" standard for NAFTA goods for the more stringent "necessarily know" standard for non-NAFTA goods. Section 207(a) of the Implementation Act also effected a bifurcation of the statute for NAFTA and non-NAFTA goods by excepting from marking original works of art and other NAFTA goods classified under certain tariff headings. 19 U.S.C. § 1304(h)(1)(B).

Given the Implementation Act's bifurcating amendments of § 1304, clearly if Congress had intended a similar bifurcation or disparate marking treatment for NAFTA and non-NAFTA goods in the application of the ultimate purchaser provision under § 1304(a), the court would expect to find some expression of that intent in the statute itself or at least its legislative history. The court finds

no evidence whatever of any Congressional intent that the ultimate purchaser provision in § 1304(a) be interpreted any differently for NAFTA and non-NAFTA goods, and the bifurcating amendments to other provisions of the same statute compel the conclusion that Congress intended no change in the application of the ultimate purchaser provision of § 1304(a).

Based on the foregoing amendatory action under § 1304, leaving the ultimate purchaser provision in § 1304(a) as construed in *Gibson–Thomsen* entirely intact, plaintiff's reliance on the oft-invoked doctrine of legislative ratification or adoption of judicial interpretation is entirely warranted. *Pierce v. Underwood*, 487 U.S. 552, 567, 108 S.Ct. 2541, 2551, 101 L.Ed.2d 490 (1988); *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 541, 98 S.Ct. 2923, 2929, 57 L.Ed.2d 932 (1978); *Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 869–70, 55 L.Ed.2d 40 (1978); *Public Citizen, Inc. v. F.A.A.*, 988 F.2d 186, 194 (D.C.Cir.1993). *See also United States v. Palacio*, 4 F.3d 150, 154 (2d Cir.1993), *cert. denied*, 510 U.S. 1166, 114 S.Ct. 1194, 127 L.Ed.2d 543 (1994).

### IV.

There is no merit in defendant's claim that application of *Gibson–Thomsen* to the ultimate purchaser provision in § 1304(a) would render application of the Marking Rules to except NAFTA goods from marking ineffective.

Defendant claims that application of *Gibson–Thomsen* to the ultimate purchaser provision of § 1304(a) would undermine application of the Marking Rules making them ineffective, since the objectives of the latter rules are general applicability, expedition and economy, while the former test requires a fact-specific analysis and adjudication on a case-by-case basis. It follows, according to defendant, to avoid that result application to NAFTA goods of solely rules of general application—Marking Rules—to the exclusion of a fact-specific adjudication was within Customs' rulemaking authority.

While economical and expeditious determinations of the origin of goods and entitlement to marking exceptions are obviously worthy administrative goals, there is little merit in defendant's concern that the continued availability to the importing community of the traditional substantial transformation test under § 1304(a) will erode the application of the NAFTA Marking Rules.

First, defendant's objection to the fact-specific traditional test as *adjunctive* (or in addition to) to the tariff shift rules is inconsistent with Customs' own dual test interim Marking Rules under 19 C.F.R. § 102.20. While for many NAFTA goods, *required* application of both tests *concurrently* apparently proved redundant, *see* 60 Fed.Reg. at 22319; T.D. 96–48, 61 Fed.Reg. 28932, 28936 (June 6, 1996), because both tests yield the same result, it does not follow that for NAFTA goods failing the requisite tariff shift, application of a fact-specific adjunctive test under *Gibson–Thomsen at the behest of the importer* would render rules of general applicability ineffective in promoting expedition and economy.

If NAFTA goods should fail the generally applicable tariff shift test, as here, adjunctive application of the traditional test to the ultimate purchaser provision of § 1304(a) as requested by an importer remains consistent with Congressional intent under the marking statute,[4] the Implementation Act, and pro-

---

4. The intent of the marking statute was articulated in *Gibson–Thomsen:* there is "nothing in the statute [§ 1304(a)] to warrant a holding that the Congress intended to require that an imported article, which is to be used in the United States as material in the manufacture of a new article having a new name, character, and use, and which, when so used, becomes an integral part of the new article, be so marked as to indicate to the retail purchaser of the new article that such imported article or material was produced in a foreign country.' *Id.*, 27 C.C.P.A. at 266, 273." Further, the Court of Customs and Patent Appeals in *Gibson–Thomsen* determined that Congress intended that § 1304(a) "cover only such imported articles as do not lose their identity as such when combined with other articles." *Id.*, 27 C.C.P.A. at 273. In the application of a marking statute, it is the intent of Congress that must prevail, and no application of the NAFTA Marking Rules should be permitted by the Court to defeat Congressional intent under the statute. As aptly observed by *amicus* GMA, regardless of the test applied under the statute, the issue remains the same: whether a finished article offered for sale to the ultimate consumer is, for

motes the stated objectives of NAFTA: to eliminate barriers to trade in, and facilitate the cross-border movement of goods between the territories of the NAFTA Parties.

If, as vigorously contended by defendant, the tariff shift rules simply "codify" the traditional substantial transformation test, and therefore, the Marking Rules generally produce essentially identical results to those reached by the traditional test, it is highly unlikely that importers' demands for costly fact-specific adjudication under the case-by-case traditional test will routinely occur, as apparently suggested by defendant. Moreover, importers invoking the traditional test and the fact-specific adjudicatory process have the rigorous burden of proving that, despite the failure of post-importation processing to comply with the requisite tariff shift, under the specific facts of the case there is still a change in the name, character or use of the imported product after processing of the imported good in the United States.

In short, the court is not persuaded by defendant that the NAFTA Marking Rules would be rendered meaningless, or adversely impacted, by the continued application of the traditional test to the ultimate purchaser provision of the statute.

### V.

The court owes no *Chevron* deference to Customs' "revised definition" of an ultimate purchaser, applying the Marking Rules.

Citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), defendant further argues that the court must defer to Customs' "revised definition" of an ultimate purchaser under § 1304(a), under which definition the Marking Rules displace the traditional substantial transformation test. While in certain cases an agency's "revised interpretation" of a statutory term may be entitled to deference, *Rust v. Sullivan,* 500 U.S. 173, 186–87, 111 S.Ct. 1759, 1768–69, 114

L.Ed.2d 233 (1991) (quoting *Chevron,* 467 U.S. at 863–64, 104 S.Ct. at 2791–92), that principle has no application here and defendant's contention merits little discussion.

Defendant's posited "revised definition" of an ultimate purchaser under § 1304(a) for NAFTA goods by applying the Marking Rules to the statute in lieu of *Gibson–Thomsen,* was nowhere suggested by Customs itself in the HRL. Moreover, as observed *supra,* such new or revised definition of the statutory provision exceeds Customs' delegated rulemaking authority and contravenes the prohibitions of the Implementation Act, § 3312(a). Accordingly, deference to a revised agency interpretation under *Chevron* has no application in this case.

### VI.

Defendant's argument that application of the *Gibson–Thomsen* test to CPC's post-importation processing reaches the same result as did Customs' in the HRL is *post-hoc* rationalization; application of the traditional test to CPC's processing has been remanded to Customs for a case-specific analysis and ruling, which must now be completed before any judicial review of the issues raised by applying the traditional test.

In the initial order, the court remanded this case for Customs' consideration of whether plaintiff's proposed manufacturing processes in the United States result in a substantial transformation of the imported good pursuant to the factors identified in *Gibson–Thomsen.* As noted at the outset, the remand proceedings were stayed pending decision of defendant's motion for rehearing. In support of its motion for rehearing and in response to the contentions of plaintiff and *amici curiae,* defendant maintains that application of substantial transformation reaches the same result as already reached by Customs in the HRL under Customs' hierarchical analysis.

purposes of § 1304(a), the *same* article as the "article of foreign origin ... imported into the United States. Thus, regardless of the test, if the finished article is not an "article of foreign ori-

gin," country of origin marking is not required *under the statute.* Regulations that defeat the purpose of the statute cannot be permitted to stand.

An exception from marking under the ultimate purchaser provision of § 1304(a), whether applying *Gibson–Thomsen* criteria or the Marking Rules, was not addressed in the HRL, and defendant's contentions concerning the result that would be reached applying substantial transformation are therefore *post hoc* rationalization. Judicial review of the issues raised by the traditional criteria would clearly be premature at this juncture and must await initial agency review and a ruling on remand.

## CONCLUSION

For the reasons expressed herein, the court adheres to its prior conclusion: 19 C.F.R. § 134.35(a) is contrary to law, and on remand Customs must rule on whether plaintiff would be the ultimate purchaser of the Canadian-origin peanut slurry within the provision therefor of § 1304(a) applying the traditional substantial transformation test. Customs will, of course, base its decision on the facts of record, as presented in the application for a ruling.

For all the foregoing reasons, it is hereby **ORDERED:**

Defendant's motion for rehearing is denied in all respects.

Customs shall complete its remand, submit the results to the court, and serve counsel for the respective parties within thirty (30) days of the service of this order.

Plaintiff and *Amici Curiae* may respond to the remand results within thirty (30) days of issuance.

Defendant may reply to any responses within fifteen (15) days of service.