# United States Court of Appeals for the Federal Circuit

05-1076

XEROX CORPORATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

John M. Peterson, Neville Peterson LLP, of New York, New York, argued for plaintiff-appellant. With him on the brief was Maria E. Celis.

Amy M. Rubin, Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appelee. With her on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, of Washington, DC; and Barbara S. Williams, Attorney in Charge, of New York, New York. Of counsel on the brief was Sheryl A. French, Attorney, International Trade Litigation, Office of Assistant Chief Counsel, United States Customs and Border Protection, of New York, New York.

Appealed from: United States Court of International Trade

Senior Judge R. Kenton Musgrave

# United States Court of Appeals for the Federal Circuit

05-1076

XEROX CORPORATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  September 19, 2005

_____

Before CLEVENGER, GAJARSA, and PROST, <u>Circuit Judges</u>.

CLEVENGER, <u>Circuit Judge</u>.

Plaintiff-appellant Xerox Corporation ("Xerox") appeals the United States Court of International Trade's decision dismissing Xerox's protest of the liquidation by the United States Customs Service ("Customs")[1] of goods imported from Mexico at the rate indicated by Xerox upon entry to be applicable.  <u>See</u> <u>Xerox Corp. v. United States</u>, No. 02-00111, slip op. 04-127 (Oct. 7, 2004) ("<u>Dismissal</u>").  The Court of International Trade determined that liquidation by Customs of the goods "as entered," rather than at a more preferential rate pursuant to the North American Free Trade Agreement

---

[1]       Effective March 1, 2003, the United States Customs Service was renamed the United States Bureau of Customs and Border Protection.  Homeland Security Act of 2002, Pub. L. No. 107-296, § 1502, 116 Stat. 2135, 2308-2309 (2002).

("NAFTA"), Dec. 17, 1992, 32 I.L.M. 289 (1993), was not a protestable decision under 19 U.S.C. § 1514 because "the issue of whether the subject merchandise was eligible for the NAFTA preference was simply never before Customs." Dismissal at 7. The court found that Xerox's protest was therefore invalid and did not give rise to jurisdiction under 28 U.S.C. § 1581(a). Id. at 7. Because Xerox did not claim preferential treatment under NAFTA for its goods at the time of entry, as provided by 19 C.F.R. § 181.21, or make a post-importation claim within a year of entry, as required by 19 U.S.C. § 1520(d), we agree that the protest was invalid and affirm the Court of International Trade's decision.

I

In 1990, leaders from the United States, Canada and Mexico entered into negotiations for the creation of a free trade zone on the North American continent. The resulting agreement, NAFTA, promotes the free flow of goods between the three signatory countries through a reduction or phased elimination of tariffs and non-tariff barriers to trade. Made in the USA Found. v. United States, 242 F.3d 1300, 1302-03 (11th Cir. 2001); see also CPC Int'l, Inc. v. United States, 956 F. Supp. 1014, 1021-22 (Ct. Int'l Trade 1997) (recognizing the stated objectives of NAFTA: "to eliminate barriers to trade in, and facilitate the cross-border movement of goods between the territories of the NAFTA Parties"). On December 8, 1993, Congress passed the NAFTA Implementation Act, wherein it approved NAFTA and enacted law to effectuate and enforce the provisions of the trade agreement. See Pub. L. No. 103-182, 107 Stat. 2057 (1993) (codified as amended at 19 U.S.C. §§ 3301-3473). The present case arises from a failed attempt by Xerox to claim preferential treatment under NAFTA and

the NAFTA Implementation Act for certain entries of electrostatic photocopiers and wire harnesses.

Between January 19 and March 2, 1998, Xerox imported 22 entries of electrostatic photocopiers and wire harnesses into the United States at the U.S. port of entry in Laredo, Texas. Xerox claimed classification of the goods at the 3.7% <u>ad valorem</u> rate under subheading 9009.12 of the Harmonized Tariff Schedule of the United States ("HTSUS"), applicable to entries of photocopiers, and the 5.3% <u>ad valorem</u> rate of HTSUS subheading 8544.41, applicable to entries of wire harnesses. Xerox did not claim at entry the preferential, duty-free tariff treatment provided by NAFTA because Xerox did not possess the requisite NAFTA Certificates of Origin, as required by 19 C.F.R. § 181.21-.22. On December 4, 11, 18 and 28 of 1998, and on January 4, 8 and 15 of 1999, Customs liquidated Xerox's entries "as entered," <u>i.e.</u>, it assessed Column 1 Normal Trade Relation Duty rates for goods classified under HTSUS subheadings 9009.12 and 8544.41.

At some point in time after entry, the Mexican exporter of Xerox's goods issued NAFTA Certificates of Origin covering the goods. On March 2, 1999, Xerox submitted the Certificates to Customs and for the first time asserted that its entries were entitled to a duty-free preference under NAFTA in a protest of the liquidation pursuant to 19 U.S.C. § 1514(a). On November 6, 2001, Customs decided upon further review that the subject entries "should have been claimed under 19 U.S.C. § 1520(d)," <u>id.</u> at 85, which allows an importer to file a post importation claim for NAFTA preference, but only within one year after the date of importation. Customs determined that "[a]llowing conversion to a post-importation NAFTA claim only the last entry [of March 2, 1998] is timely and

will be processed with a refund." Id. Customs therefore reliquidated that single entry at a more preferential rate under NAFTA and denied Xerox's protest as to the remaining 21 entries.[2]

Xerox appealed the partial denial of its protest to the Court of International Trade. Customs moved to dismiss the appeal for lack of subject matter jurisdiction because of the absence of a protestable decision by Customs to deny Xerox NAFTA treatment. Xerox moved for summary judgment, arguing that the filing of a protest under 19 U.S.C. § 1514(a), even in the absence of an earlier claim for reliquidation under 19 U.S.C. § 1520(d), is a statutorily authorized method for asserting an importer's right to a preferential rate of duty under NAFTA.

On October 7, 2004, the Court of International Trade found sections 1514(a) and 1520(d) to be "complementary statutes addressing different factual circumstances;" the former is directed towards actual decisions by customs, and the latter applies when no claim for preferential treatment was made upon entry. Dismissal at 6. The court thus framed the question before it as whether Customs made a decision to deny Xerox NAFTA preference. Answering in the negative, the court determined that the issue of NAFTA eligibility for Xerox's entries was never before Customs and that Customs therefore did not make a protestable decision to deny Xerox a preferential NAFTA rate. Id. at 7. The court held that Xerox's protest was invalid and could not give rise to jurisdiction under 28 U.S.C. § 1581(a). Id. ("[I]t is too much of a reach to construe

---

[2] Because neither party contests the reliquidation by Customs of the single entry for which conversion to a section 1520(d) post-importation NAFTA claim was timely, we address in this opinion only the 21 entries for which Xerox was denied preferential NAFTA treatment.

Customs' decision to assess Column 1 duties as a negative decision regarding preferential NAFTA treatment.").

The Court of International Trade thus dismissed Xerox's protest for lack of subject matter jurisdiction. Xerox appeals. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1295(a)(5).

II

The Court of International Trade's jurisdictional ruling was based upon that court's interpretation of 19 U.S.C. §§ 1514 and 1520. We review the Court of International Trade's interpretation of those statutory provisions de novo. Goodman Mfg., L.P. v. United States, 69 F.3d 505, 508 (Fed. Cir. 1995). We also review under a de novo standard the decision by the Court of International Trade to dismiss the case for lack of jurisdiction. Friedman v. Daley, 156 F.3d 1358, 1360 (Fed. Cir. 1998).

III

Xerox argues on appeal that the Court of International Trade erred in finding no protestable decision by Customs to liquidate Xerox's entries "as entered." Recognizing that Customs was required by law to "fix the final classification and rate of duty applicable to" Xerox's entries, 19 U.S.C. § 1500(b) (1994), Xerox contends that Customs's liquidation of Xerox's entries "as entered" presupposes an earlier finding by Customs that the entries were not entitled to the duty-free preference of NAFTA. Xerox then urges that this finding merged into the liquidation by Customs of the subject goods, such that the liquidation itself was a protestable decision. Xerox also points to 19 C.F.R. § 10.112, a regulation that allows an importer to file, before liquidation becomes final, any document necessary for free or reduced duties under any

agreement if the importer's failure to file upon entry was not the result of willful negligence or fraudulent intent. Xerox claims that the Court of International Trade erred in failing to find the regulation dispositive in its favor.

The government responds that "[b]ecause Customs' 'as entered' liquidation of Xerox's merchandise was indisputably correct based on the information provided at entry, and because any potential claim for a NAFTA preference had expired by the time that Xerox filed its 'protest,' the 'protest' was invalid because it was not based on an actual protestable decision." (Appellee's Br. at 44-45.) The government concludes that the Court of International Trade was correct in dismissing the case because invalid protests cannot give rise to jurisdiction under 28 U.S.C. § 1581(a).

A

Section 1514(a) of Title 19 of the U.S. Code provides a procedural mechanism by which an importer can protest certain decisions of Customs. See United States v. Cherry Hill Textiles, Inc., 112 F.3d 1550, 1557 (Fed. Cir. 1997) ("the underlying policy of section 1514 . . . is to channel challenges to liquidations through the protest mechanism"). At the time of Xerox's protest, section 1514(a) provided that

> decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to—
>> (1) the appraised value of merchandise;
>> (2) the classification and rate and amount of duties chargeable;
>> (3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;
>> (4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;
>> (5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof;

05-1076 6

> (6) the refusal to pay a claim for drawback; or
> (7) the refusal to reliquidate an entry under section 1520(c)
> of this title;
>
> shall be final and conclusive upon all persons . . . unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade . . . .

19 U.S.C. § 1514(a) (1994) (emphasis added).[3] The section further required an importer to file a section 1514 protest within 90 days of Customs's decision. Id. § 1514(c)(3). Section 1514 thus provided that a decision by Customs pertaining to the classification, rate and amount of duties applied to a given importer's entries are final as to that importer and all others, unless the importer protests the decision within 90 days. See Juice Farms, Inc. v. United States, 68 F.3d 1344, 1346 (Fed. Cir. 1995) ("Without a timely protest, all liquidations become final and conclusive under 19 U.S.C. § 1514."). If Customs denies what otherwise is a valid protest, the Court of International Trade has exclusive jurisdiction over any civil action commenced to contest the denial. See 28 U.S.C. § 1581(a) (2000) (establishing jurisdiction);[4] Park B. Smith, Ltd. v. United States, 347 F.3d 922, 924 (Fed. Cir. 2003) ("The Court of International Trade is required to

---

[3] Section 1514(a) has since been amended by Pub. L. No. 106-36 to include among the specifically enumerated protestable matters the refusal to reliquidate an entry under 19 U.S.C. § 1520(d), which governs post-importation claims to preferential treatment under NAFTA. 19 U.S.C. § 1514(a) (Supp. V 1999).

[4] Section 1581(a) states: "The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930." 28 U.S.C. § 1581(a). Section 515 governs the administrative review of protests filed under section 514 of the Tariff Act, as codified at 19 U.S.C. § 1514. Shinyei Corp. of Am. v. United States, 355 F.3d 1297, 1304 (Fed. Cir. 2004). Section 1581(a) jurisdiction lies only for valid protests of the enumerated categories of section 1514(a). See Tikal Distrib. Corp. v. United States, 970 F. Supp. 1056, 1060 (Ct. Int'l Trade 1997) ("Section 1581(a) provides no jurisdiction for protests outside of the exclusive categories listed in 19 U.S.C. § 1514(a).").

decide, on a de novo basis, civil actions that contest the denial of a protest to a Customs classification ruling.").

Under the guise of a section 1514(a) protest of the liquidation of certain entries of electrostatic photocopiers and wire harnesses, Xerox sought to claim in the first instance preferential treatment under NAFTA. The Court of International Trade thus appropriately summated the dispositive issue as "whether Customs made a decision to deny the NAFTA preference." Dismissal at 6. If Customs did, either upon entry of the goods or at liquidation, then Xerox's protest of the liquidation of its entries "as entered" rather than at a more preferential NAFTA rate was a valid protest and gives rise to jurisdiction before the Court of International Trade.

B

An importer's right to preferential tariff treatment for goods qualifying under the NAFTA rules of origin does not automatically vest upon entry. See 19 U.S.C. § 3332 (1994) (listing rules of origin). An importer seeking preferential treatment is instead required to make a written declaration that the goods qualify for NAFTA treatment, as is set forth in Article 501(1) of NAFTA[5] and implemented in 19 C.F.R. § 181.21(a).[6] The

---

[5]    Pursuant to Article 501(1) of NAFTA:

The Parties shall establish by January 1, 1994 a Certificate of Origin for the purpose of certifying that a good being exported from the territory of a Party into the territory of another Party qualifies as an originating good, and may thereafter revise the Certificate by agreement.

Art. 501(1), 32 I.L.M. 289, 358.

[6]    Section 181.21(a) provides:

In connection with a claim for preferential tariff treatment for a good under the NAFTA, the U.S. importer shall make a written declaration that the

importer must base the declaration on a properly executed NAFTA "Certificate of Origin" that covers the good being imported. See 19 C.F.R. § 181.11(a) (1997) ("A Certificate of Origin shall be employed to certify that a good being exported either from the United States into Canada or Mexico or from Canada or Mexico into the United States qualifies as an originating good for purposes of preferential tariff treatment under the NAFTA."); 19 C.F.R. § 181.22(b) (1997) (describing the submission of a Certificate of Origin by an importer).

Though an importer must submit a written declaration and the appropriate NAFTA Certificates of Origin to advantage itself of preferential tariff treatment, an importer need not do so immediately upon entry of the subject goods. Article 502(3) of the agreement provides:

> Each Party shall provide that, where a good would have qualified as an originating good when it was imported into the territory of that Party but no claim for preferential tariff treatment was made at that time, the importer of the good may, no later than one year after the date on which the good was imported, apply for a refund of any excess duties paid as the result of the good not having been accorded preferential tariff treatment . . . .

Art. 502(3), 32 I.L.M. 289, 358 (emphasis added). Article 502(3) thus requires that the signatory countries allow a claim for preferential treatment to be made in the first

---

> good qualifies for such treatment. The written declaration may be made by including on the entry summary, or equivalent documentation, the symbol "CA" for a good of Canada, or the symbol "MX" for a good of Mexico, as a prefix to the subheading of the HTSUS under which each qualifying good is classified. . . . [T]he declaration shall be based on a complete and properly executed original Certificate of Origin, or copy thereof, which is in the possession of the importer and which covers the good being imported.

19 C.F.R. § 181.21(a) (1997).

instance at any point in time up to but not later than one year after entry of qualifying goods.

To comply with the terms of Article 502(3), Congress in section 206 of the NAFTA Implementation Act amended section 520 of the Tariff Act of 1930 by adding to it a provision allowing Customs to refund excess duties paid above those properly due under NAFTA, if a claim for preferential treatment is made within one year of entry. Codified at 19 U.S.C. § 1520(d), the provision reads:

> Notwithstanding the fact that a valid protest was not filed, the Customs Service may, in accordance with regulations prescribed by the Secretary, reliquidate an entry to refund any excess duties paid on a good qualifying under the rules of origin set out in section 3332 of this title for which no claim for preferential tariff treatment was made at the time of importation if the importer, within 1 year after the date of importation, files, in accordance with those regulations, a claim that includes—
> (1) a written declaration that the good qualified under those rules at the time of importation;
> (2) copies of all applicable NAFTA Certificates of Origin (as defined in section 1508(b)(1) of this title);  and
> (3) such other documentation relating to the importation of the goods as the Customs Service may require.

19 U.S.C. § 1520(d) (1994) (emphasis added).

To be sure, the history behind the enactment of NAFTA implementing legislation shows intent by Congress to allow for the "refund of excess duties paid as a result of incorrect declarations."   H.R. Rep. No. 103-361, at 44 (1993).   But it also overwhelmingly reiterates the one-year time period for claiming entitlement to a refund premised on NAFTA eligibility.  See id. ("the importer must, within one year after the date of importation, file a NAFTA claim in accordance with the implementing regulations");  S. Rep. No. 103-189, at 23 (1993) (noting that section 206 authorizes Customs to "reliquidate an entry and grant NAFTA tariff treatment to the entry if the

importer, within one year of the date of importation, files a claim and provides such documents as may be required"); see also S. Rep. No. 104-393, at 2 (1996) (noting that "an importer has up to one year to make a claim for a refund of deposited duties when imported merchandise is eligible for NAFTA preferential tariff rates" and that a provision of the Miscellaneous Trade and Technical Corrections Act of 1996 "clarifies that the Customs Service will pay interest as of the date of the importer's claim, rather than from the date of deposit of duties"); H.R. Rep. No. 104-718, at 18 (1996) (recognizing "cases where an importer has up to a year after the entry to make a claim for preferential tariff treatment under the NAFTA").

Section 181.31 of the relevant regulations implements Article 502(3) of NAFTA and 19 U.S.C. § 1520(d) and reinforces the one-year time period for raising a NAFTA claim in the first instance. See NAFTA, 58 Fed. Reg. 69,460, 69,463 (1993) ("Sections 181.31 through 181.33 implement NAFTA Article 502(3) and section 206 of the Act, which allow an importer, who did not claim NAFTA tariff benefits on a qualifying good at the time of importation, to apply for a refund of any excess duties at any time within one year after the date of importation."). Section 181.31 provides:

> Notwithstanding any other available remedy, including the right to amend an entry so long as liquidation of the entry has not become final, where a good would have qualified as an originating good when it was imported into the United States but no claim for preferential tariff treatment on that originating good was made at that time under § 181.21(a) of this part, the importer of that good may file a claim for a refund of any excess duties at any time within one year after the date of importation of the good in accordance with the procedures set forth in § 181.32 of this part.

19 C.F.R. § 181.31 (1997) (emphasis added); see also id. § 181.32 (describing the procedure for filing a post-importation NAFTA claim).

The mandate of Article 502(3) of NAFTA and of the implementing legislation and regulations is clear; the time period provided by law for raising in the first instance a claim for preferential treatment under NAFTA expires one year from entry of the subject goods. In other words, under the agreement and implementing law, Xerox had one year from entry to make a claim for NAFTA preferential treatment. It did not.

C

"Customs must engage in some sort of decision-making process in order for there to be a protestable decision." U.S. Shoe Corp. v. United States, 114 F.3d 1564, 1569 (Fed. Cir. 1997); see also Mitsubishi Elecs. Am., Inc. v. United States, 44 F.3d 973, 977 (Fed. Cir. 1994) (finding that Customs merely follows Commerce's instructions in assessing and collecting antidumping duties and thus does not make an antidumping decision protestable under section 1514); Dart Exp. Corp. v. United States, 43 C.C.P.A. 64, 69-70 (1956) (holding that the assessment of duties at entry based on information provided by the importer cannot be a "decision" within the meaning of section 1514). Seeing no claim for NAFTA treatment at the time of entry, as provided by 19 C.F.R. § 181.21(a), and having before it no valid post-importation claim pursuant to 19 U.S.C. § 1520(d), Customs liquidated Xerox's entries "as entered" at Column 1 Normal Trade Relation Duty rates. Customs at no time expressly considered the merits of NAFTA eligibility, nor could it without a valid claim by Xerox for such eligibility. We thus hold that it did not make a protestable decision to deny Xerox NAFTA treatment in this case. There simply is no plausible basis for attributing to Customs a decision denying Xerox a claim that did not exist and indeed could not exist at the time Xerox purported to raise it, i.e., more than one year after entry.

By holding as we do, we do not suggest that liquidation by Customs of goods "as entered" can never give rise to a protestable decision—that by liquidating goods "as entered," Customs necessarily will not engage in the sort of decision-making process identified by U.S. Shoe. Indeed, the government at oral argument conceded that Xerox might very well have the right to protest the liquidation of its goods "as entered," were it not for the rules governing the post-importation claims for preferential treatment under NAFTA. But hypotheticals aside, the rules governing post-importation NAFTA claims provide the exact context from which this case arises. Our decision thus turns on the rule of NAFTA and of 19 U.S.C. § 1520(d) that an importer must make a post-importation claim for preferential treatment within one year of entry. Xerox did not make a timely claim for preferential tariff treatment and, consequently, cannot prevail in a "protest" of the liquidation of its goods by Customs "as entered". See Power-One Inc. v. United States, 83 F. Supp. 2d 1300, 1306 (Ct. Int'l Trade 1999) ("Prior to denial of a § 1520(d) claim, Customs has made no decision which can be protested.").

Both parties discuss the Court of International Trade's decision in Corrpro Cos. v. United States, 2004 WL 2030260 (Ct. Int'l Trade Sept. 10, 2004). In Corrpro, an importer of sacrificial magnesium anodes protested the determination by Customs that the merchandise was not entitled to NAFTA treatment. Customs argued before the Court of International Trade that the court lacked jurisdiction under 28 U.S.C. § 1581(a) because the importer did not make a claim for NAFTA treatment at entry under 19 C.F.R. § 181.21(a) or after importation under section 19 U.S.C. § 1520(d). Customs claimed that a decision protestable under 19 U.S.C. § 1514(a) must be preceded by one or the other.

The Court of International Trade found that the importer was precluded by a binding Customs classification ruling from making a NAFTA claim at entry or within one year thereof. The classification ruling was subsequently revoked. The Court of International Trade then held that the protestable decision for section 1514 purposes was Customs's initial classification of the subject merchandise under a non-NAFTA heading, and that "[t]his initial decision does not specifically have to regard NAFTA treatment when the importer cannot raise the issue due to a binding classification ruling." Corrpro, 2004 WL 2030260, at *5.

Corrpro is distinguishable from the present case in that Xerox was not precluded by a Customs ruling from making a proper claim for NAFTA treatment, but instead was precluded by its own failure to obtain, or the exporter's failure to provide, the requisite NAFTA Certificates of Origin. Because the factual scenario of Corrpro is not now before this court, we express no opinion on the exception created therein to the one-year time period for making a NAFTA claim in the first instance.

IV

Xerox contends that nothing in NAFTA or the NAFTA Implementation Act limits an importer's right to file a protest within 90 days of liquidation to claim entitlement to a NAFTA preferential rate of duty. According to Xerox, "[i]mporters seeking the application of NAFTA preferential rates of duty to their goods enjoy the same protest rights as all other importers." (Appellant's Br. at 24.) We disagree.

It is true that the NAFTA Implementation Act itself specifically provides that "[n]o provision of the Agreement, nor the application of any such provision to any person or circumstance, which is inconsistent with any law of the United States shall have effect,"

19 U.S.C. § 3312(a)(1) (1994), and that nothing in the Act "shall be construed . . . to amend or modify any law of the United States," id. § 3312(a)(2). See Bestfoods v. United States, 165 F.3d 1371, 1376 (Fed. Cir. 1999) ("section 102(a) [of the NAFTA Implementation Act] simply ensures that NAFTA will not be construed as having implicitly amended or repealed any federal statute"). But our holding is not inconsistent with the statutory scheme governing an importer's general right to protest an adverse decision by Customs.

By passing the NAFTA Implementation Act, Congress statutorily altered only those trade relations of the United States with Mexico and Canada and created for importers of goods from one of the three signatory countries the right to preferential tariff treatment. See Miss. Poultry Ass'n, Inc. v. Madigan, 31 F.3d 293, 315 (5th Cir. 1994) (noting that Congress specifically tailored the implementing legislation to alter only U.S. relations with Mexico and Canada). The agreed-upon right under the treaty is not absolute, as is evident from Article 502(3) of NAFTA, and Congress was free to define the contours of an importer's entitlement to the right, in accord with NAFTA itself, to require that an importer make a claim for NAFTA treatment within one year of entry. Our interpretation of 19 U.S.C. § 1520(d) to require that very thing does not lessen an importer's right to protest a decision by Customs to deny the importer NAFTA treatment, so long as the importer was entitled to that treatment in the first place. Xerox relinquished its entitlement when it failed to make a claim within one year of entry.

Xerox also contends that the Court of International Trade erred in failing to apply 19 C.F.R. § 10.112 to Xerox's claims for NAFTA preferential treatment. Section 10.112 provides:

> Whenever a free entry or a reduced duty document, form, or statement required to be filed in connection with the entry is not filed at the time of the entry or within the period for which a bond was filed for its production, but failure to file it was not due to willful negligence or fraudulent intent, such document, form, or statement may be filed at any time prior to liquidation of the entry or, if the entry was liquidated, before the liquidation becomes final.

19 C.F.R. § 10.112 (1997).

In the absence of a proper claim for NAFTA treatment, either at entry or within a year of entry, however, Customs cannot make a protestable decision to deny an importer preferential NAFTA treatment. In addition, the existence of a protestable decision of the type enumerated in 19 U.S.C. § 1514(a) is a condition precedent for jurisdiction to lie in the Court of International Trade under section 1581(a). We think it beyond reproach, then, that an importer cannot use section 10.112 to circumvent the clear mandate of NAFTA and 19 U.S.C. § 1520(d) that allows an importer only one year to file a claim in the first instance for NAFTA treatment. Simply put, we may not construe 19 C.F.R. § 10.112 to increase the one-year time period for making a post-importation NAFTA claim and thus increase the Court of International Trade's jurisdiction under 28 U.S.C. § 1581(a). See Audiovox Corp. v. United States, 598 F. Supp. 387, 389-90 (Ct. Int'l Trade 1984) ("the Court may not construe 19 C.F.R. § 10.112 to increase its jurisdiction"); see also Bell v. New Jersey, 461 U.S. 773, 777 (1983) ("Since federal courts are courts of limited jurisdiction, the court below could hear the case only if authorized by statute."). To allow Xerox to file a late claim for NAFTA treatment pursuant to section 10.112 would do exactly that.

V

In the face of a clear statutory and regulatory scheme allowing for post-importation NAFTA claims but only if made within one year of entry, Xerox chose to raise a post-importation claim under the guise of a 19 U.S.C. § 1514(a) protest more than a year after entry.  The Court of International Trade was correct in finding the protest invalid and in dismissing the appeal for lack of jurisdiction.  The Court of International Trade's decision is therefore affirmed.

<u>AFFIRMED</u>